# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTREX USA, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 08-3570 |
| | : | |
| PRECISE PLASTIC PRODUCTS, INC., | : | |
| Defendant. | : | |
| | : | |

**GOLDBERG, J.**                                                                                    **August 5, 2009**

## MEMORANDUM OPINION

This case involves a contract dispute between Plaintiff, Victrex USA, Inc., and Defendant, Precise Plastic Products, Inc.  Before the Court is Defendant's FED. R. CIV. P. 12(b)(2) motion, seeking either the dismissal of Plaintiff's Declaratory Judgment action or a transfer of venue. Defendant asserts that it lacks sufficient minimum contacts with Pennsylvania to subject it to personal jurisdiction in this forum.  For reasons that follow, I grant Defendant's Motion to Dismiss but deny the Motion to Transfer Venue.

## I. FACTS PERTINENT TO THE MOTION

Plaintiff, a corporation organized under the laws of Delaware and currently headquartered in Pennsylvania, manufactures VICTREX PEEK polymer,  a plastic used in aerospace, automotive and semiconductor industries.  Defendant, a corporation organized and maintaining headquarters in California, manufactures injection-molded precision plastic parts for use in defense, aerospace and medical industries.

1

On March 6, 2003, Defendant entered into a credit contract with Plaintiff so that Defendant could order polymer from Plaintiff and subsequently be billed by invoice for those orders.  The contract was consummated when Defendant sent a signed agreement via facsimile to Plaintiff in South Carolina, where Plaintiff was headquartered at the time.  The agreement set forth the terms of sale that would apply to all purchases and included a provision which stated that South Carolina law would govern the agreement and performance.  Amongst other requirements of the contract, Defendant was to remit payment for purchases to a post office box in California. (Compl., pp. 2-4, Exh. B; Pl.'s Memo., p. 3; Def.'s Memo., p. 1).

From 2003 to 2006, Defendant made thirteen (13) purchases from Plaintiff.  Each of the purchase orders were addressed to Plaintiff in South Carolina, and as contracted, subsequent payments were sent by Defendant to Plaintiff's post office box in California.

In November 2006, and after the thirteen (13) transactions described above, Plaintiff moved its South Carolina headquarters to West Conshohocken, Pennsylvania.  In doing so, Plaintiff sent "We've Moved!" notices to its customers, and follow-up notices regarding the change of headquarters' location.  Plaintiff also changed its website, business cards and stationery to reflect its new Pennsylvania address.  (Pl.'s Memo., pp. 4-5).

Thereafter, Defendant made three (3) purchases from Plaintiff on January 31,  March 5,  and March 19, 2008.  As with prior transactions, these purchase orders were faxed or emailed.  Although these orders were received by Plaintiff in Pennsylvania, they were addressed to Plaintiff's previous South Carolina address.  Payment for these purchases was again sent to Plaintiff's post office box in California.  (Def.'s Memo., p. 4, Exh. B).  Although Plaintiff had moved its headquarters prior to these three (3) transactions, the record before us does not reflect that Plaintiff specifically notified Defendant of this fact during the course of filling these particular three (3) orders.

2

The next two (2) transactions, which are the subject of the dispute before the Court, occurred on April 30, 2008, and May 27, 2008. On April 30, 2008, Defendant's employee called Plaintiff to inquire if Plaintiff could compound the PEEK plastic with other materials. Apparently, Defendant's employee placed this call unaware that they were calling Pennsylvania. Upon confirmation that Plaintiff could complete that request, Defendant emailed a purchase order, which again contained Plaintiff's old South Carolina address. This order was sent to the attention of a specific sales representative working for Plaintiff. On May 2, 2008, without ever notifying Defendant that the wrong address was contained on the order, Plaintiff shipped the material to Defendant in California. (Def.'s Memo., p. 5, Exh. D; Compl., p. 5, Exh. C).

On May 27, 2008, Defendant placed a second order with Plaintiff by email and again addressed the purchase order to Plaintiff's old address in South Carolina. Upon receipt of this order, Plaintiff's representative called Defendant and advised that the purchase order had the wrong address. In response, Defendant emailed a second revised purchase order containing Plaintiff's Pennsylvania address. The next day, Plaintiff sent Defendant an invoice containing its Pennsylvania address, and thereafter filled the order on June 3, 2008. (Def.'s Memo., p. 6, Exh. E; Pl.'s Memo., Exh. K).

On June 4, 2008, Defendant informed Plaintiff that it intended to file suit for alleged defects in the material delivered to Defendant pursuant to the April 30, 2008, and May 27, 2008, orders. Before Defendant could do so, Plaintiff filed suit in this Court, expanding the nature of the dispute, seeking: a declaratory judgment that the contract was valid and enforceable; a demand of $22,998.19 for non-payment on the April 30, 2008, and May 27, 2008, transactions; and damages for unjust enrichment and promissory estoppel. Defendant filed its Motion to Dismiss or Transfer Venue on October 24, 2008. (Compl., pp. 6-11).

## II. <u>DISCUSSION</u>

    A.  <u>Personal Jurisdiction</u>

      Defendant has moved for dismissal or transfer of this case based on a lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2).  When deciding a motion to dismiss for lack of personal jurisdiction, we must accept the allegations in the complaint as true.  <u>Dayhoff, Inc. v. H.J. Heinz Co.</u>, 86 F.3d 1287, 1302 (3d Cir. 1996).  However, a 12(b)(2) motion, "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies."  <u>Time Share Vacation Club v. Atl. Resorts, Ltd.</u>, 735 F.2d 61, 66, n.9 (3d Cir. 1984).  Once personal jurisdiction is challenged, the burden shifts to the plaintiff to establish that the district court has personal jurisdiction over the nonresident defendant.  A plaintiff must satisfy this burden through the use of affidavits or other competent evidence.  <u>Id</u>.

      "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."  <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 436 (3d Cir. 1987) (citing FED. R. CIV. P. 4(e)).  Pennsylvania's long arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over nonresidents to the "fullest extent allowed under the Constitution of the United States."  42 Pa.C.S. § 5322(b).  The due process clause of the United States Constitution permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

      Personal jurisdiction may be exercised under two distinct theories - general or specific.  <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2001).  General jurisdiction is proper where a defendant's contacts with the forum state are "continuous and systematic" and exists whether or not

the cause of action is related to a defendant's activities in Pennsylvania.  Id.  Here, Plaintiff apparently concedes that there is no general jurisdiction over Defendant in the Eastern District of Pennsylvania, so we will only address whether there is sufficient specific jurisdiction.

Specific jurisdiction arises from a defendant's activities in the forum state that relate to the particular cause of action being litigated.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985).  A court can properly exercise specific jurisdiction when the defendant has purposefully established "minimum contacts" with the forum state such that he could reasonably anticipate being haled into court there.  Id. at 474.  A single contact can support jurisdiction only if it creates a substantial connection with the forum.  Id. at 476, n.18.  The four factors to be considered in a minimum contacts analysis of a breach of contract case are: (1) the character of the pre-contract negotiations; (2) the location of those negotiations; (3) the terms of the sales agreement; and (4) the type of goods sold.  Strick Corp. v. A.J.F. Warehouse Distribs., Inc., 532 F.Supp. 951, 958 (E.D.Pa. 1982).

Plaintiff argues that this Court has specific jurisdiction based on Defendant's communications and business in Pennsylvania, which purposefully directed activities at this forum. While these factors seem to relate more to general jurisdiction, Plaintiff also points to the telephone and facsimile communications initiated by Defendant and directed toward Plaintiff regarding the two (2) transactions at issue, which occurred while Plaintiff was located in Pennsylvania.  Plaintiff cites Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476 (3d Cir. 1993), for the proposition that "mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."  Id. at 482.  (Pl.'s Memo., pp. 9-11).

Defendant counters that the formation of the contract between the parties did not involve Pennsylvania and that for many of the transactions leading up to the two (2) purchase orders at

issue, they did not know they were communicating with Plaintiff in Pennsylvania. (Def.'s Memo., pp. 12-13). Although the parties apparently did transact while Plaintiff was located in Pennsylvania, for reasons set forth below, we are unpersuaded that these facts are sufficient to justify maintaining jurisdiction in this Court.

First, the contract which governs the agreement between the parties and which forms the basis of Plaintiff's declaratory judgment action, was executed by the parties in South Carolina and California, with no connection to Pennsylvania. Defendant's nonpayment for goods ordered and received, which is at the heart of this controversy, occurred in California. Indeed, the contract required that all payments be remitted to Plaintiff through a post office box in California. Additionally, the contract's choice of law provision unequivocally states that South Carolina law governs. Thus, several of the <u>Strick</u> factors, including the character and location of the pre-contract negotiations, as well as the terms of the contract itself, disfavor Pennsylvania and suggest that jurisdiction might be appropriate in either South Carolina or California. <u>Strick</u>, 532 F.Supp. at 958-59.

Plaintiff stresses that after they received the May 27, 2008 order mistakenly addressed to South Carolina, they affirmatively advised Defendant of its new address, thus, establishing that Defendant was aware that Plaintiff's headquarters was in Pennsylvania. However, this transaction is insufficient to justify maintaining jurisdiction in this Court. While sending twenty-eight (28) purchase orders and subsequent payment for those orders to Pennsylvania were sufficient minimum contacts to exercise personal jurisdiction, <u>Blue Ribbon Commodity Traders, Inc. v. Supermercados Mr. Special, Inc.</u>, 2008 WL 2468381, *5 (E.D. Pa. 2008), six (6) purchase orders, without more, were found to be insufficient. <u>Freedom Forge Corp. v. Jersey Forging Works, Inc.</u>, 549 F.Supp. 99,

101 (M.D.Pa. 1982) ("the thin thread of the sending of six (6) purchase orders into Pennsylvania is not sufficient to pull the Defendant into the jurisdictional net of this Court.").

Here, Plaintiff can point to only one (1) transaction, the last between the parties occurring on May 27, 2008, where they affirmatively advised Defendant that they had been using the incorrect South Carolina address.  While Defendant had sent the last five (5) purchase orders (including the last two (2) at issue) to Plaintiff in Pennsylvania, all prior orders placed by Defendant occurred while Plaintiff's headquarters were located in South Carolina.  Moreover, in all orders placed by Plaintiff, whether a South Carolina or Pennsylvania address was used, Plaintiff filled and shipped the product to Defendant in California.  Only in the case of one (1) order, the last, did Plaintiff take the time to notify Defendant of the change of address, prompting Defendant to revise its final purchase order to reflect Plaintiff's Pennsylvania address.  Thus, it appears as if Plaintiff can only establish that Defendant addressed one (1) purchase order to Plaintiff in Pennsylvania, fully understanding that Plaintiff's headquarters were now located in that state.  That one (1) transaction is far less than the six (6) in <u>Freedom Forge Corp.</u>, which were found to be insufficient to establish minimum contacts.

Finally, we are mindful of the fact that the contract at issue and the disputed purchase orders were entered into by two (2) sophisticated commercial entities and involve a large scale commercial product, which might generally favor the exercise of personal jurisdiction.  <u>See</u> <u>Strick</u>, 532 F.Supp. at 959.  However, we find that the terms of the contract, the pre-contract negotiations and the small number of purchase orders directed to Pennsylvania tip the scales against maintaining jurisdiction in this Court.

In summary, given the limited number of purchase orders and communications that were knowingly sent to Plaintiff in Pennsylvania and the Court's finding that the majority of all

jurisdictional factors point to either California or South Carolina, we find that there is not personal

jurisdiction over Defendant in the Eastern District of Pennsylvania.

    B.  <u>Venue</u>

    As an alternative to dismissing the Complaint against Defendant for lack of personal

jurisdiction, this Court may transfer venue pursuant to 28 U.S.C. § 1631,[1] which states:

> Whenever a civil action is filed in a court as defined in section 610 of this
> title or an appeal, including a petition for review of administrative action, is
> noticed for or filed with such a court and that court finds that there is a want
> of jurisdiction, the court shall, if it is in the interest of justice, transfer such
> action or appeal to any other such court in which the action or appeal could
> have been brought at the time it was filed or noticed, and the action or
> appeal shall proceed as if it had been filed in or noticed for the court to
> which it is transferred on the date upon which it was actually filed in or
> noticed for the court from which it is transferred.

28 U.S.C. § 1631.  In short, this statute authorizes transfer to another district: 1) where plaintiff's

claim could have been brought originally, and 2) where that transfer would be in the interest of

justice.  <u>Gaglioti v. Int'l Cosmetic Labs.</u>, 1993 WL 492801, at *5 (E.D.Pa. 1993) (citing

<u>Christanson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 818 (1988)).

    Defendant would like venue transferred to the Central District of California where they are

headquartered.  The facts set forth above regarding personal jurisdiction suggest that either

California, due to the alleged breach of contract, or South Carolina, due to the terms of the contract,

might be appropriate venues.  However, given the facts presented above, which point to two (2)

possible venues but do not conclusively suggest one (1) over the other, we are not in a position to

determine whether there are minimum contacts sufficient to establish personal jurisdiction in either

---

[1]  This Court may also have authority to transfer this case pursuant to 28 U.S.C. § 1406(a).  That
statute authorizes such a transfer, even where personal jurisdiction is lacking, when venue is
improper.  <u>See</u> <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 466 (1962).  The parties have not,
however, provided this Court with sufficient evidence to determine whether venue is improper in
the Eastern District of Pennsylvania.

of those venues.  Thus, we decline to order the transfer of this action to another jurisdiction.  (Def.'s Memo., pp. 14-15).

### III.  <u>CONCLUSION</u>

For the foregoing reasons, this Court concludes that it does not have personal jurisdiction over Defendant Precise Plastic Products, Inc. in the Eastern District of Pennsylvania.  However, we decline to transfer venue to the Central District of California.  Our Order follows.